### FIRST NAT. BANK OF PATERSON *et al. v.* CENTRAL NAT. BANK. *et al.*

*(Supreme Court, Special Term, New York County.* May 6, 1889.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—PAYMENT TO BONA FIDE CREDITOR.
　　Where the assignee has paid the claim of a *bona fide* creditor preferred by the assignment, and subsequently the assignment is set aside as fraudulent, other creditors, whose claims did not become liens until after such payment to the preferred creditor, cannot compel the latter to account for it. He is in the position of a *bona fide* purchaser for value, and unaffected by any fraud in the assignment, to which he was not a party.

Creditors' bill.    On demurrer to complaint.

*John J. Adams,* (*Charles E. Hughes,* of counsel,) for plaintiffs.    *Martin & Smith,* (*Charles A. Strong,* of counsel,) for defendant Central National Bank.

O'BRIEN, J.   The questions here considered arise upon a demurrer to the complaint.   In July, 1884, the firm of Halsted, Haines & Co. made a general assignment for the benefit of creditors.   Under that assignment the defendant the Central National Bank was a preferred creditor to the amount of $40,000, and this amount of money was actually paid to it by the assignee. Some time after the assignment, and after the payment of the $40,000, one of the plaintiffs recovered judgment against the assignors, and at intervals thereafter, during a period ending in December, 1887, the other plaintiffs recovered other similar judgments.   Executions were issued and returned unsatisfied, and plaintiff now brings a creditors' action, seeking to have applied to the satisfaction of its judgment this sum of $40,000.   In another action the assignment in question was in January, 1888, adjudged to be fraudulent and void.   The bank demurs as to each and all of the plaintiffs on the grounds— *First*, that the original assignee should have been joined as a defendant; *second*, that the complaint does not state facts sufficient to constitute a cause of action.

As to the first ground, as suggested by counsel, no consideration need here be given.   As to the second ground of demurrer, it will be equally unnecessary to determine the strength of the propositions urged, viz.:   That no fraud or conspiracy is properly alleged in the complaint; and, *secondly*, allowing that the bank cannot hold the moneys under the assignment, yet it can still hold them under the judgment, execution, and levy in favor of the bank, mentioned in the complaint.   This brings us to the main contention in the case, which is, assuming that the assignment is sufficiently alleged to have been fraudulent as against creditors, can money actually paid to the Central National Bank, as a preferred creditor under the assignment before plaintiffs began their creditors' action, be reached by them?   The amount involved, the novelty and importance of the question, the absence of a direct controlling authority, rendered an extended and earnest consideration necessary.   In its labors the assistance given the court, not only upon the argument, but in the able and exhaustive briefs of counsel, notably plaintiffs', which for the force and originality with which the different propositions are discussed, should be acknowledged and commended.

The plaintiffs, with much force, contend that a creditor preferred in a fraudulent general assignment cannot retain the moneys received from the assignee as against subsequently attacking creditors, for the reasons, they claim, that, the fraudulent general assignment falling within the provisions of the "statute of frauds" against fraudulent conveyances, that property so fraudulently transferred may be reached by creditors as long as it remains in the possession of the fraudulent transferee, or those in privity with him, which would include the preferred creditor here.   The sole exception to the operation of the statute, they assert, is in favor of *bona fide* purchasers for value.   The strength of this contention is to be determined, in the absence of any direct authority in this state, by a consideration of the principles applicable to the case at bar, and the arguments furnished by decisions in analogous cases. The principles governing these decisions, which may be cited argumentatively, may be conveniently divided into three classes.

*First.* It is well settled that a creditor may take either real or personal property from a transferee of his debtor, although the transfer by the latter (the debtor) is fraudulent; and, if such creditor has in no way participated in the fraud, he may hold the property as against other creditors seeking to avoid the transfer.   *Wood* v. *Robinson*, 22 N. Y. 564; *Seymour* v. *Wilson*, 19 N. Y. 417; and *Murphy* v. *Briggs*, 89 N. Y. 446.

*Second.* Under fraudulent assignments, assignees have been protected to the extent to which the property has been applied to the payment of the assignor's debts.   *Pond* v. *Comstock*, 20 Hun, 492.

*Third.* There are cases holding that upon the setting aside of a general as-

signment the assignee must account for all the funds in his hands at the time the suit was begun, and was not allowed to retain moneys due to himself as a preferred creditor, although the same may have been actually appropriated to his claim. *Bostwick* v. *Beizer*, 10 Abb. Pr. 197; *Coope* v. *Bowles*, 42 Barb. 87; *Rathbun* v. *Platner*, 18 Barb. 272. The cases of *Bostwick* v. *Beizer* and *Coope* v. *Bowles*, *supra*, are not entitled to much weight, for the reasons that the facts in these cases are not given, nor is any principle stated, the judge in *Coope* v. *Bowles* merely saying that all payments made under the assignment to others than the assignee prior to the commencement of the action should be allowed; and in *Bostwick* v. *Beizer* a similar statement is made. This leaves but the single case of *Rathbun* v. *Platner*, 18 Barb. 272, which decides that an assignee, who was also a preferred creditor, was not entitled to retain moneys (although appropriated to the payment of his debt) received under an assignment subsequently set aside as fraudulent. Even if regarded as an authority, there is a clear distinction between that case and the one at bar. The assignee in that case was an actual party to the fraudulent assignment, whereas in this the creditor cannot be regarded (in the same sense) as a party or privy to the fraudulent act or instrument of the debtor. The principles applied, moreover, in the decision of that case, seem to me to be at variance with the recent decisions, by confining the rights of the parties under fraudulent instruments to the single instance of a debtor conveying property directly to his creditor in payment and satisfaction of a *bona fide* debt, and by asserting with approval the principle that no rights can be predicated upon a fraudulent instrument. The principles applicable to the first of these three classes of cases, therefore, have most weight as arguments, being more analogous, and bearing more directly upon the question here involved. The leading authorities of this class are *Seymour* v. *Wilson* and *Murphy* v. *Briggs*, *supra*.

In the former case, A., being insolvent and owning a valid mortgage, transferred it to C., to secure a debt owing by B., "A.'s brother," to C. The receiver of the property of A. sued for the amount collected by C. upon the mortgage, and in reversing the judgment in favor of the defendant the court said: "Let us for a moment consider the case in the light of the statute of frauds. * * * It is because both law and justice recognize the equitable interest of the creditor in the property of his debtor that a transfer of such property with intent to defeat the claim of the creditor is declared to be void, and the right of a *bona fide* purchaser for a valuable consideration is protected by the statute, because the equity of such a purchaser is superior to that of the mere general creditor,—superior for the obvious reason that the purchaser has not trusted, as the creditor has, to the personal responsibility of the debtor, but has paid the consideration upon the faith of the debtor's actual title to the specific property transferred. * * * When, however, the transfer, instead of being to a stranger, is to a creditor of the vendor, a different principle applies. It is not necessary, in such a case, that the vendee, in order to protect himself from a claim by the other creditors, should show any new consideration paid; for the obvious reason that his equity, at the time of the transfer, was the same as theirs, and he is entitled to the benefit of the universal rule that where the equities are equal the legal title must prevail. Such a transaction could amount to nothing more than the voluntary preference of one creditor over another; and, supposing the creditor receiving the transfer to have full knowledge of the object of his debtor, the title which he acquires would not be thereby affected. There is no doubt that the debt paid or secured by the transfer must, in such a case, be regarded as a ʻvaluable consideration' within the section which saves the rights of *bona fide* purchasers; so that if the creditor acts in good faith, and for the mere purpose of obtaining satisfaction of his own debt in accepting the transfer, he will acquire a valid title. * * * But where the conveyance is made to a creditor, not of the vendor

himself, but of a third party, the case is entirely different.   *   *   *   He, therefore, must show something more than a naked legal title, or his claim must yield to the prior equitable interest residing in them.   His debt, therefore, cannot be regarded as a ' valuable consideration ' within the saving clause referred to, consistently with the principles which lie at the foundation of the statute.''

In *Murphy* v. *Briggs, supra,* it was held, (head-note:) "Where a debtor has conveyed real estate in fraud of his creditors, and at his request his grantee has given a mortgage thereon to secure a debt of the grantor which existed at the time of the conveyance to a creditor ignorant of its fraudulent character, the mortgage comes within the exception in the statute of frauds, (2 Rev. St. p. 137, § 5,) protecting the rights of purchasers in good faith, and 'for a valuable consideration,' and, although the conveyance be set aside in an action brought by other creditors, the mortgage cannot be affected." The pre-existing indebtedness constitutes a valuable consideration, within the meaning of the statute.

These cases are therefore conclusive upon the question that where an antecedent debt is due from the original transferrer it is such a valuable consideration as to bring the creditor from the intermediate transferee in good faith within the protection accorded to *bona fide* purchasers for value. It is true that in cases that can be cited the creditor has taken, either by direct conveyance from his debtor, or by conveyance from the transferee of his debtor, under an instrument to which the creditor was a stranger.   In the former case, when he takes directly from his debtor he obtains a legal title, and his *bona fide* debt makes his equity and the equity of the other creditors of his debtor equal, so that the transfer cannot be impeached, as he is then regarded as a *bona fide* purchaser for value.   In the latter, when he takes from the transferee of his debtor he likewise relies upon the legal title acquired by the conveyance, and upon the antecedent debt due from the original owner.   A distinction is sought to be taken between the principles applicable to these two classes of cases and that of a preferred creditor under a fraudulent assignment.   In the former it is asserted the creditors were innocent of all connection with the fraud, and were dealing as utter strangers to the transactions, while in the latter it is asserted the preferred creditor is identified with the fraudulent transfer, either as a party thereto or as an express beneficiary.   If it could be concluded from the mere naked fact of being a creditor, general or preferred, of an insolvent debtor who makes a fraudulent general assignment, that he thereby becomes so identified with the fraudulent transfer as to be regarded either as a party or privy to the fraudulent act or deed, such a distinction might involve a difference in principle.   I do not think that creditors, general or preferred, can be regarded as parties in the sense in which that word is here sought to be used; a creditor's position being simply that of a person whom the instrument or substitute has been directed to pay.   If the creditor takes from the fraudulent transferee under oral directions, subsequently given by the debtor to the transferee, as we have seen, he gets a good title.   The fact that the instructions are written at the time of the transfer in the deed or instrument itself, and are not verbal, should seemingly make no difference. But let us consider the question under another aspect.   It must be concluded from the cases cited that the bank, the defendant here, having a valid debt, was ready with a valuable consideration sufficient to support the payment. The question of consideration is then eliminated.   The question, therefore, is narrowed down to this:   Does the bank, taking from the assignee a payment in pursuance of a trust, fraudulent and void as against plaintiffs, take it *mala fide?*   It is not claimed that the bank had any notice of the fraud, or that it directly participated therein, or was actually a party thereto, and it is therefore difficult to fix upon any ground or principle which would hold that the bank is chargeable with bad faith.   As before stated, unless the mere fact

that the bank is named as a preferred creditor in a fraudulent assignment is controlling against it upon the question of good faith, the only other ground upon which plaintiffs' contention can rest is that the title of the assignee, having been declared to be fraudulent and void, affects the right and title of the bank to the money. It has been shown that a creditor receiving property or securities other than money from a fraudulent transferee of his debtor has an unassailable title, as a purchaser in good faith for a valuable consideration. If the title to money paid can be predicated upon or determined by the same principles applicable to other property when considered in the light of the statute of frauds, the payment here can be upheld. But it is not to be concluded that this is the only ground upon which the right of a creditor to hold property or money received from the original debtor or fraudulent transferee as against subsequent attacking creditors having no specific lien can be supported, for, as stated in *Seymour* v. *Wilson, supra:* "The statute, therefore, is merely declaratory of principles which the courts would enforce independently of its enactment, and is, of course, to be construed in the light of those principles."

The plaintiff's entire contention is predicated upon the basis that, unless the creditor can bring himself within the exception made in the statute of frauds in favor of *bona fide* purchasers for value, there is no other principle upon which a creditor getting payment of his debt from the assignee can support his right to retain it. Apart from the distinction which I think should be observed between money and other property, let us see if there is no other principle applicable, apart from the statute of frauds, upon which the right to retain the moneys can be based. Under the law of this state, any debtor may prefer any one of his creditors by actually paying or securing a claim. Halsted, Haines & Co. might have lawfully themselves, out of their joint assets, paid the bank in full, or secured it in some way, even though that would have left every other creditor wholly unpaid. What they could lawfully do in person, they could likewise lawfully do by the agency of another selected by them for the purpose. Until some creditors secured a specific lien upon their assets, they could use these as they saw fit, in effecting a preference among actual creditors. Assuming that the general assignment was fraudulent and void as against creditors who chose to attack it, nevertheless it was good as between assignors and their assignee, and good as against all creditors who acquiesced in it. An assignment executed in accordance with the provisions of law, valid on its face, is not void, but voidable. The title to all the property of the assignors passed to the assignee, and until attacked such title was perfect.

As against the plaintiff in the case at bar, the assignee was until lately not only entitled to execute the assignment by paying the $40,000 to the bank, but he was in law bound to do so, and this court would have so compelled him. There is much force, then, in the suggestion that the same court should not now declare fraudulent and illegal an act—to-wit, the payment—which at any time during these years it would have adjudged the assignee bound to perform. Although the assignment was fraudulent, yet until some creditor objected, brought his action, and secured a lien, the assignee was acting as the substituted instrument of the assignor in doing what the latter had always a perfect right to do, namely, pay one creditor instead of another. The money, therefore, of the debtor, with the assent of the assignee, having reached the hands of the creditor, and been applied in payment of his debt, three years before any lien attached or suit was commenced or attempt made to ascertain the validity of the assignment, it is difficult to see upon what principles the moneys can be wrested from such a creditor by a subsequent creditor of the same debtor, who prior to the payment acquired no lien on the money. A debtor could always apply his property or money to the payment of actual, honest debts until some creditor secured a specific lien upon it. As shown, he may

even do this after he has made a fraudulent transfer, provided the fraudulent transferee assents and assists. *Murphy* v. *Briggs, supra.*

At the time of the assignment the equities in favor of plaintiffs were no greater or stronger than in favor of the bank. By direction of the assignor and assent of the assignee, and in spite of the fraud originally committed, the payment here finally went to pay an honest debt before any creditor secured a specific lien. As stated in *Murphy* v. *Briggs:* "The law does not deprive parties of the right to restore property to legitimate purposes which has been fraudulently appropriated." "The mortgages were only an appropriation of Moore's property to the payment of his honest debts, and whether this was done by the grantee of the same, with Moore's approval, or by Moore himself, could make no difference. If the title was in Moore (the debtor) he could have given a preference and created a lien to pay the indebtedness of the mortgagees, and the grantee having, with Moore's consent, done what the grantor could have done by applying the property to pay the demands of creditors, there is no ground for claiming that such transfer was invalid. * * * The rights of the mortgagees, as creditors, to have their debts preferred by the mortgages on the property of the debtor are equally equitable with the claims of the creditors, and no valid ground is apparent why they should be placed behind other creditors, when the liens of the latter are of a later date." Applying, therefore, the principle that a debtor (by a valid or fraudulent instrument) may himself or through an agent prefer or pay any claim; that a creditor with the assent of the debtor and the person having property or money of the debtor can apply it to the payment of his debt; that the equities of the creditors when the payment was made were equal,—these are sufficient grounds for supporting the payment made to the preferred creditor and for refusing to compel him to give over, in favor of other creditors bringing suits years afterwards, moneys appropriated in payment of an honest debt."

Having, therefore, reached a conclusion upon what I regard as the principles and authorities applicable to the case at bar, the other considerations urged in support of this conclusion, upon grounds of public policy, are worthy of a passing comment. Could the right of the defendant to retain the money be successfully assailed years afterwards, the result might be serious to creditors, general or preferred, who took any of their debtor's property under an assignment; for each creditor would then be at the mercy of every other creditor for at least six years, (the time limited for bringing an action under the Code,) during which, after a suit brought which resulted in a judgment declaring the assignment void, a creditor could recover back the moneys paid to a creditor under the assignment. As has been well said, nothing can be more injurious to mercantile prosperity than the feature of uncertainty. Human skill and industry can grapple with obstacles and difficulties mountain high, provided only they can be clearly seen. But uncertainty is too vague and shadowy an opponent to meet and overthrow. Therefore, in the absence of a direct controlling authority in this state, or of a certain legal principle to support it, the court may well hesitate to lay down a rule of law which would produce uncertainty and encourage litigation so far-reaching in its results, and one that, notwithstanding the great amount of litigation relating to insolvent assignments, has never before been invoked or applied. There should therefore be judgment for defendant on the demurrer.